IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TINA CHAMBLISS-PARTEE,

                    Plaintiff,              Civil Action No.
                                            5:16-CV-1539 (LEK/DEP)
        v.

JOHN LANGHE, North East
Car Connection, *et al.*,

                    Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

TINA CHAMBLISS-PARTEE, *Pro se*
109 Michaels Avenue
First Floor
Syracuse, NY 13208

FOR DEFENDANT:

[NONE]


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER, REPORT, AND RECOMMENDATION

        *Pro se* plaintiff Tina Chambliss-Partee has commenced this action

pursuant to 42 U.S.C. § 1983 alleging that the three named defendants

have violated her civil rights. In her complaint, plaintiff asserts three

causes of action, all of which center upon her contention that Frederick Czeizinger, who is deceased ("the decedent"), executed a Last Will and Testament bequeathing the bulk of his estate to her, and that defendants have, in one way or another, acted contrary to the decedent's intentions.

Plaintiff's complaint and accompanying request for leave to proceed in the action *in forma pauperis* ("IFP") have been forwarded to me for review. Based upon my consideration of those documents, plaintiff's application for leave to proceed without prepayment of fees is granted, but I recommend that her complaint be dismissed with leave to replead.

I.    BACKGROUND

Plaintiff commenced this action on December 28, 2016. Dkt. No.  1. Named as defendants in her complaint are (1) John Langhe, who is identified as a used car dealer; (2) Donald Czeizinger, who is said to be the decedent's son and the executor of his estate; and (3) Kristen Lester-Hernandez, who, plaintiff alleges, is a "Director" of one of the offices of the New York State Department of Motor Vehicles ("DMV"). *Id.* at 6-7.

The allegations in plaintiff's complaint are scattered and somewhat confusing. Liberally construed, however, plaintiff first alleges that, although defendant Langhe was directed to prepare paperwork reflecting that plaintiff was trading in a 2007 black Ford Focus and purchasing a 2006

Jeep Grand Cherokee, the Jeep was instead titled to the decedent. Dkt.
No. 1 at 7-8. In her second cause of action, plaintiff accuses defendant
Donald Czeizinger of illegally acquiring the 2006 Jeep Grand Cherokee
and transporting it to the Virginia in derogation of the decedent's Last Will
and Testament, which, according to plaintiff, bequeathed the bulk of his
estate to plaintiff, with the exception of the sum of $5.00 to each of his
children. *Id.* at 8-9. Petitioner's third claim accuses defendant Lester-
Hernandez of complicity in the scheme to register the 2006 Jeep Grand
Cherokee in the name of defendant Donald Czeizinger. *Id.* at 9-10. As
relief, plaintiff requests compensatory and punitive damages in the total
amount of $700,000. *Id.* at 8-11.

Attached to plaintiff's complaint are several documents. The first
purports to be a written document dated November 5, 2013, and signed by
the decedent. Dkt. No. 1 at 13. In that document, the decedent purports to
convey to plaintiff both his 2007 Ford Focus and his property located at
254/256 West Brighton Avenue, Syracuse, New York. *Id.* The second
attachment to plaintiff's complaint appears to be a sales agreement
entitled "NorthEast Car Connection LLC." *Id.* at 14. The agreement
appears to reflect that plaintiff entered into an agreement to purchase the
2006 Jeep Grand Cherokee and to trade in the 2007 Ford Focus toward

3

that purchase.[1] *Id.* Also attached to the complaint is a handwritten document dated October 2, 2013, addressed "[t]o whom it may concern" and stating that the decedent agreed to pay plaintiff $10 per hour to act as his assistant, and reflecting that the hours associated with that position were "24 hours around the clock[.]" *Id.* at 16. The last attachment is a form entitled "Will for Adult with No Children" (referred to in this report as the "Last Will and Testament"), which is notarized and signed by the decedent and two witnesses. Dkt. No. 1 at 18. The Last Will and Testament purports to bequeath "all real estate property [the decedent] own[ed] as well as any veichles [sic] [he] own[ed] also [he left] 5 dollars to each of [his] children." *Id.* at 17. The decedent's residuary estate was bequeathed to plaintiff. *Id.*

Plaintiff's complaint is accompanied by an application for leave to proceed without prepayment of fees or costs. Dkt. No. 2. That application reflects that plaintiff's sole source of income is $820.00 in Supplemental Security Income. *Id.*

---

[1]    "Tina R. Chambliss-Partee POA for Frederick Czeizinger" is listed as the "BUYER" on the agreement, and the document is signed by plaintiff with a notation "POA Frederick Czeizinger." Dkt. No. 1 at 14.

## II.    DISCUSSION

### A.    IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a).[2] A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). In this instance, because I conclude that plaintiff meets the requirements for IFP status, her application for leave to proceed without prepayment of fees is granted.[3]

---

[2]    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although her IFP application has been granted, she will still be required to pay fees that she incurs in this action, including copying and/or witness fees.

B.    Sufficiency of Plaintiff's Complaint

    1.    Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case without prepayment of fees, I must next consider the sufficiency of the claims set forth in her complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363

6

(2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2.    Analysis of Plaintiff's Claims

Plaintiff's complaint makes reference to a proceeding in Onondaga County Surrogate's Court involving the decedent's estate. Dkt. No. 1 at 7. During the course of my review of plaintiff's complaint and IFP application, I have obtained a decision entered in that matter by Honorable Ava S. Raphael, Onondaga County Surrogate, on December 2, 2014.[4] Judge Raphael's decision reveals that the proceeding involved plaintiff's attempt to offer for probate the decedent's purported Last Will and Testament, which is attached as an exhibit to plaintiff's complaint in this action. Dkt. No. 1 at 17-18. Judge Raphael noted that plaintiff, the petitioner in that matter, would be disqualified from acting as the executrix of the decedent's estate in light of her previous felony convictions, including for intent to defraud and forgery. In addition, Judge Raphael declined to probate the proffered Last Will and Testament because she was not satisfied as to the genuineness of the document and found that it was not executed in compliance with the controlling legal requirements under New York State

---

[4]    Although Judge Raphael's decision is not attached to the complaint in this action, it is referenced in plaintiff's complaint, and, in any event, is a matter of public record of which this court is entitled to take judicial notice. Fed. R. Evid. 201(b)(2); *see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings." (quotation marks omitted)). A copy of Judge Raphael's decision is attached to this report.

law. It is against this backdrop that I have analyzed plaintiff's claims in this action.

### a.    First Cause of Action

Plaintiff's first claim is asserted against defendant Langhe who, as was previously noted, is identified as a used car dealer. Dkt. No. 1 at 6. Plaintiff accuses defendant Langhe of intentionally listing Frederick Czeizinger as the owner of the 2006 Jeep Grand Cherokee instead of plaintiff. *Id.* at 7-8. In doing so, plaintiff contends that defendant Langhe exercised "deliberate indifference, [sic] to plaintiff's [rights under the] 4th, 5th, 14th Amendments[.]" *Id.* at 8.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). Section 1983 "'is not itself a source of substantive rights[,] . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, a

plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *accord, Byng v. Delta Recovery Servs. LLC*, 568 F. App'x 65, 65-66 (2d Cir. 2014).

State action is an essential element of any section 1983 claim. *Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, J.)). To survive scrutiny under section 1915(e) where a plaintiff has asserted a section 1983 claim, the complaint must allege facts that plausibly suggest state action on the part of the named defendants. *See DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir.1975), *modified on other grounds by DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975), ("A private party violates [section] 1983 only to the extent its conduct involves state action."); *see also Wilson v. King*, No. 08-CV-0509, 2008 WL 2096593, at *1 (N.D.N.Y. May 16, 2008) (Sharpe, J.).

Because plaintiff has failed to allege that defendant Langhe acted under color of state law when listing the 2006 Jeep Grand Cherokee as

belonging to Frederick Czeizinger, I recommend that her first cause of action be dismissed.

### b.     Second Cause of Action

Liberally construing her second claim, plaintiff appears to accuse defendant Donald Czeizinger[5] of illegally taking possession of the 2006 Jeep Grand Cherokee.[6] Dkt. No. 1 at 8-9. She claims that, in doing so, defendant Donald Czeizinger "violated [her] Constitutional rights to Due Process of law as well as the Equal Protection of the law, and the right to be free from cruel and unusual treatment all under the 4th, 5th, 8th, and 14th Amendments to the U.S. Constitution." *Id.* at 9.

As an initial matter, plaintiff's second cause of action fails for the same reason as her first claim does. In particular, there are no allegations

---

[5]     In her decision, Judge Raphael notes that Donald Czeizinger is a person under a disability. Based upon that finding, Judge Raphael appointed Robert F. Baldwin, Jr., Esq. as guardian *ad litem* for that individual, whose full name appears to Frederick Donald Czeizinger.

[6]     It is not exactly clear the basis on which plaintiff believes she should have acquired legal title to the 2006 Jeep Grand Cherokee. The decedent's purported Last Will and Testament in this matter bequeathed to his children all of his real estate, all of his legal property, and five dollars each. *See* Dkt. No. 1 at 17 ("I leave All Real Estate property I own as well as any veichles [sic] I own also I leave 5 dollars to each of my children[.]"). I am therefore confused by plaintiff's allegation in her complaint that defendant Donald Czeizinger "illegally acquired from plaintiff's possession" the 2006 Jeep Grand Cherokee. *Id.* at 8. In light of my obligation to extend special solicitude to *pro se* litigants and construe their pleadings to raise the strongest possible legal claims, I have analyzed plaintiff's second cause of action to allege that she had some attainable legal right to the vehicle, which defendant Donald Czeizinger thereafter illegally stripped from her.

in her complaint to indicate that defendant Donald Czeizinger acted under color of state law when he allegedly took unlawful possession of the 2006 Jeep Grand Cherokee. Accordingly, I recommend dismissal of the second cause of action on this basis.[7]

In addition, plaintiff's second claim runs afoul of the *Rooker-Feldman*[8] doctrine, which, recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at

---

[7]    It is worth noting that, although plaintiff includes the phrase "under color  of law" throughout her complaint, *see, e.g.,* Dkt. No. 1 at 9, it is not, on its own, enough to push a cause of action over the line from speculative to plausible. *See, e.g., Khanukayev v. Times Square Alliance*, at *2 (S.D.N.Y. May 20, 2010) ("While [the plaintiff] repeatedly makes the allegation that the [defendant] 'was acting under color of state law' at the time it allegedly harassed him, this allegation is merely a legal conclusion that must be disregarded under *Iqbal*." (citations omitted)).

[8]    *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

any time by either party or sua sponte by the court." *Moccio v. N.Y.S.*

*Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted),

*abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant

of original jurisdiction, and does not authorize district courts to exercise

appellate jurisdiction over state-court judgments, a role which Congress

has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc.*

*Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district

courts do not have jurisdiction to hear cases "brought by state-court losers

complaining of injuries caused by state-court judgments rendered before

the district court proceedings commenced and inviting district court review

and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a

state court judgment 'simply by casting his complaint in the form of a civil

rights action.'" *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y.

2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A]

federal suit complains of injury from a state-court judgment, even if it

appears to complain only of a third party's actions, when the third party's

actions are produced by a state-court judgment and not simply ratified,

14

acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97
(quotation marks omitted).

Plaintiff's second cause of action attempts to revive the decedent's
Last Will and Testament, dated November 5, 2014, that was specifically
rejected by Judge Raphael in Onondaga County Surrogate's Court. Under
these circumstances, I recommend that the court decline to entertain
jurisdiction over plaintiff's second claim based upon *Rooker-Feldman*.

### c.    Third Cause of Action

In her third cause of action, plaintiff claims that defendant Lester-
Hernandez violated her due process rights under the Fifth and Fourteenth
Amendments when she registered the 2006 Jeep Grand Cherokee to
defendant Donald Czeizinger in her official capacity as the Director of the
New York State Department of Motor Vehicles. Dkt. No. 1 at 7, 9-10.
Plaintiff seeks only money damages as relief against defendant Lester-
Hernandez. *Id.* at 10, 11.

The Eleventh Amendment protects a state against suits brought in
federal court by "private parties seeking to impose a liability which must be
paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S.
651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing
Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute

immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claim in this action against defendant Lester-Hernandez in her official capacity is, in reality, a claim against the State of New York, and therefore is subject to dismissal. *Daisernia*, 582 F. Supp. at

798-99. Accordingly, I recommend that plaintiff's third cause of action be dismissed with prejudice.[9]

C.    Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a

---

9    Even if the court were to construe plaintiff's third cause of action as being asserted against defendant Lester-Hernandez in her individual capacity, it would nonetheless fail. Plaintiff offers no facts plausibly suggesting that the defendant was complicit in depriving her of any constitutional right. Instead, plaintiff accuses defendant Lester-Hernandez of "mismanagement and malpractice of record keepings," reflecting that her role was limited to permitting defendant Donald Czeizinger to register the vehicle in question – a strictly ministerial act. Dkt. No. 1 at 9-10. These allegations are insufficient to support a cognizable civil rights violation against defendant Lester-Hernandez in her individual capacity.

plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, while plaintiff's claim asserted against defendant Lester-Hernandez in her official capacity should be dismissed with prejudice because any further amendment would be futile, I recommend plaintiff be granted an opportunity to amend her complaint to cure the deficiencies identified above in connection with the other two claims asserted.

If plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-

1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).
Therefore, in any amended complaint, plaintiff must clearly set forth the
facts that give rise to the claims, including the dates, times, and places of
the alleged underlying acts, and each individual who committed each
alleged wrongful act. In addition, the revised pleading should allege facts
demonstrating the specific involvement of any of the named defendants in
the constitutional deprivations alleged in sufficient detail to establish that
they were tangibly connected to those deprivations. *Bass v. Jackson*, 790
F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such
amended complaint will replace the existing complaint, and must be a
wholly integrated and complete pleading that does not rely upon or
incorporate by reference any pleading or document previously filed with
the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d
Cir. 1994) ("It is well established that an amended complaint ordinarily
supersedes the original, and renders it of no legal effect." (quotation marks
omitted)).

IV.   SUMMARY, ORDER, AND RECOMMENDATION

Having reviewed plaintiff's IFP application, I have determined that she qualifies for that status and will therefore grant the application. Plaintiff's complaint, however, is subject to dismissal pursuant to 28 U.S.C. § 1915(e) for the reasons articulated above. Accordingly, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that defendants' complaint in this action be DISMISSED with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

[10]    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon plaintiff in accordance with this court's local rules.

Dated:       January 12, 2017
             Syracuse, New York


David E. Peebles
U.S. Magistrate Judge

SURROGATE'S COURT
COUNTY OF ONONDAGA            STATE OF NEW YORK

In the Matter of The Estate of

     FREDERICK CZEIZINGER,

Deceased.                                                    File No.  2014-816/B

APPEARANCES:
Tina Chamblis Partee
Woodruff L. Carroll, Esq.
CARROLL & CARROLL, P.C.

Donald Czeizinger
Raymond Dague, Esq.

Frederick D. Czeizinger
Robert Baldwin, Jr., Esq.
BALDWIN & SUTPHEN, LLP.

## DECISION AND ORDER

AVA S. RAPHAEL, SURROGATE

     On May 22, 2014, petitioner sought to admit to probate a document that decedent purportedly

executed on November 5, 2013. The document nominated the decedent's care giver, Tina R.

Chambliss-Partee[1] (hereinafter the petitioner), as executrix as well as the residuary beneficiary. By

an order of this court, Robert F. Baldwin, Jr. was appointed as Guardian ad Litem for Frederick

Donald Czeizinger, decedent's son and a person under a disability. The guardian ad litem has

vigorously explored the validity of the propounded instrument.

     An examination of witness pursuant to SCPA 1404 was conducted in front of the Court on

September 17, 2014. Initially, the petitioner was examined, together with only one of the witnesses,

---

[1] Petitioner is a convicted felon including convictions for intent to defraud and forgery and
in any event would be disqualified from acting as the executrix.

1

James Anderson.  Charles E. Garland, a funeral director, who notarized the document also testified.

Mr. Garland testified first.  He stated that petitioner had requested he "notarize" the will and she drove the witnesses and decedent to his funeral home. The entire execution was completed in the parking lot of Mr. Garland's establishment with decedent and the witnesses seated in the car. All questions and transactions were carried out through an open window of the car and completed on a clipboard. He asked decedent if it was his will, asked the witnesses to witness the will and assisted in obtaining signatures. Mr. Garland stated that he was unfamiliar with the occupants of the car and asked for ID's "which in this case was their licenses, NYS driver's licenses in which all were valid and I had them witness." (tr at 13, lines 21-23).

The only witness to testify on September 17, 2014 was James Anderson. Mr. Anderson is an 86 year old man who did not appear to fully understand the events that took place on November 5, 2013 when decedent signed the purported will in the car. While Mr. Anderson appeared to be well meaning, he had obvious difficulty recognizing his own signature on the proferred document.  In direct contrast with Mr. Garland's testimony, Mr. Anderson emphatically testified that he never had a driver's license, ( tr at 108, lines 7-21), thereby negating Mr. Garland's description of the signing in which he stated that he looked at both witnesses' driver's licenses for identification. Mr. Anderson's testimony was confusing, contradictory and largely repetitive. It was clear that he was unable to read the documents presented for him to identify. Although he was able to correctly point to his signature,  his testimony was insufficient to prove due execution of the purported will.

At the conclusion of the examination petitioner's counsel advised the court that the second witness, Joseph Edwards, could not be located and petitioner was given an extension of time to produce the missing witness. No application was made by petitioner to dispense with the testimony

2

of the second attesting witness. Petitioner's argument that she did not have to produce the second

attesting witness, as Mr. Garland could serve as such, is unpersuasive.[2]  After various discrepancies

as to the location and availability of Mr. Edwards, he was eventually produced on October 10, 2014

and the examination continued. The second witness, Joseph Edwards, was totally unbelievable. His

testimony was replete with contradictions and inconsistencies.

For example, Mr. Edwards' testimony regarding the affidavit of witness form that he signed

and had notarized is so convoluted and disjointed that the court has no clear understanding of the

circumstances surrounding its execution.  First, he stated that he signed it in May in Florida and had

no other documents with him when he filled it out and signed it in front of a notary (tr at 25, lines 18 -

25, at 26, lines 1-9).   He then contradicted himself by stating that although he did not have the

original will with him as stated in the affidavit, he did have a copy of it with him when he signed the

affidavit (tr at 27, lines 15-17).  He then back tracked to his original story stating that the copy of the

will was not "sitting right next to me, when I was notified that this was needed, I was at work, I filled

it out...." (tr at 28, lines 13-17).  Mr. Edwards further testified that the affidavit was completed in

Florida (tr at 29, line 3).    He again contradicted himself by stating the affidavit was notarized in

Erie County (tr at 73, line 16).  Mr. Edwards' entire testimony was extraordinarily confusing and

smacked of disingenuousness.

The Court, "[b]efore admitting a will to probate...must inquire particularly into all the

facts and must be satisfied with the genuineness of the will and the validity of its execution...."

(SCPA § 1408(1)).  Pursuant to  EPTL §3-2.1 the requirements for a valid will are the following:

---

[2]Even in an uncontested probate proceeding, a will must still be proved by the
examination or affidavit of the attesting witnesses (Charles J. Groppe et al.,  Harris, New York
Estates; Probate Administration and Litigation § 7:119 at 420 16th ed [ 2014]).

(a) Except for nuncupative and holographic wills authorized by § 3-2.2, every will must be in writing, and executed and attested in the following manner:
(1) It shall be signed at the end thereof by the testator...

(2) The signature of the testator shall be affixed to the will in the presence of each of the attesting witnesses, or shall be acknowledged by the testator to each of them to have been affixed by him or by his direction.  The testator may either sign in the presence of, or acknowledge his signature to each attesting witness separately.

(3) The testator shall, at some time during the ceremony or ceremonies of execution and attestation, declare to each of the attesting witnesses that the instrument to which his signature has been affixed is his will....

While there was some doubt as to the drafter of the document, it is undisputed that at no time was an attorney involved in its drafting or execution, thus no presumption of due execution exists. In the present situation, virtually none of the requirements for due execution were adequately fulfilled. The circumstances surrounding the supposed will execution were sketchy at best with gaping holes.  For example, there was no clear testimony that this document was either read by decedent or read to him at the time of its execution and that he knew its terms as well as the objects of his bounty.  There were contradictory statements as to whether it was decedent or Mr. Garland who actually requested the attesting witnesses to witness his will.  Although the end of the document contains a paragraph which combines the witness signatures with an attestation clause, it does not rise to a level of proving regularity and validity.

A visual review of the propounded document reveals that it is a Fill-in the Blank Will with the blanks filled in by hand.   The document clearly states on its face at the top of the first page the following:

**"Do not just fill in and sign this form.**  A will cannot contain a mix

4

> of handwritten and machine printed material. You can use this preprinted form as a rough draft. However, you must use a typewriter or computer (using the form on CD) to prepare the final draft of your will."

Thus by its own terms, in its current form, this document is not a valid will.

The Court also notes that the propounded instrument is titled at the top right in very large, bold letters **"Will for Adult with No Children"**. According to the probate petition, decedent had five children. This serves to cast even further doubt on the validity of this document as it does not properly reflect even very basic information about decedent's circumstances, i.e. his children.[3]

Accordingly, the Court is not satisfied with the genuineness of this document or that the due execution requirements of EPTL §3-2.1 for a valid will have been met. Probate of the propounded instrument is hereby denied.

This Decision shall serve as the Order of this Court.

Dated: 12/2/2014

_Ava S. Raphael_
Hon. Ava S. Raphael
Surrogate

---

[3] Decedent at the very least must know the objects of his bounty.

5